# CHARLESTON.

ILA E. MORAN *v.* H. L. MORAN, EXECUTOR.

Submitted March 6, 1923. Decided March 13, 1923.

1. EXECUTORS AND ADMINISTRATORS—*Relative Cannot Recover for Services and Support Rendered Decedent Without Proof of Express Contract.*

   Without proof of an express contract therefor, or proof direct, positive and unambiguous of facts and circumstances from which it may reasonably be inferred that there was a clear understanding that a decedent expected to pay and plaintiff expected to receive compensation for his maintenance and support, a son or daughter or near relative with whom such decedent has made his home can not recover from his estate for the services and support thus rendered. (p. 346).

2. NEW TRIAL—*Verdict on Conflicting Evidence Not Disturbed.*

   When the burden of proof so imposed has been borne by one suing for such maintenance and support, the verdict of the jury on conflicting evidence should not be set aside on the motion of the personal representative sued for the value of such maintenance and support of his decedent. (p. 348).

3. APPEAL AND ERROR—*Documentary Evidence Must be Made Part of the Record by a Proper Bill of Exceptions.*

   If on the trial of such an action the defendant offers or proposes to offer evidence of the record of a prior judgment in favor of the plaintiff's wife in whole or in part for the same services or support and such evidence is rejected, to avail himself here on writ of error of any error in the rulings of the circuit court, such documentary evidence must be made a part of the record by proper bill of exceptions or in some other way, so that this court may be able to determine whether the party complaining was prejudiced thereby. (p. 348).

4. LIMITATION OF ACTIONS—*Limitations Held Not to Begin to Run Until After Death of Promissor in Contract to Pay for Support of Decedent.*

   Where the only contract proved or attempted to be proved in such a case was that payment was not to be made until

after the death of the decedent, the statute of limitations does not begin to run until after the death of the promissor. (p. 349).

5.  TRIAL—When General Verdict is Complete Answer to Proposed Interrogatories, Not Erroneous to Refuse to Submit Them to the Jury.

    If the general verdict of the jury will furnish a complete answer to interrogatories proposed, no error will be committed by the trial court in declining to submit such interrogatories to the jury. (p. 349).

Error to Circuit Court, Taylor County.

Action by Ila E. Moran against H. L. Moran, executor. From a judgment for plaintiff, defendant brings error.

*Affirmed.*

*Shaw & Shaw* and *Robinson, Warder & Robinson,* for plaintiff in error.

*G. W. Ford* and *O. E. Wyckoff,* for defendant in error.

MILLER, PRESIDENT:

The judgment below upon the verdict for plaintiff for the sum of $1,207.75, and a remittitur of $82.75, entered by plaintiff, was that the plaintiff recover of defendant H. L. Moran, Executor of the estate of Hezekiah Moran, deceased, out of any estate he may have of his decedent the sum of $1,125.00, with interest thereon from March 9, 1922, the date of the verdict, until paid, and costs.

The total sum sued for was $2,226.33, itemized in the bill of particulars filed as follows: To 48 months board at $25.00 per month, $1,200.00; To 27 months board at $30.00 per month, $829.00; To labor, services and materials, $82.75; To taxes paid the sheriff, 1912, $5.50, 1913, $5.85; paid the city of Grafton $3.23.

. The declaration in assumpsit covering said bill of particulars avers a special contract with the decedent to provide him with food, drink, attendance and care and to bestow certain labor and materials upon his property and to pay the taxes thereon, and the performance of the contract on plaintiff's part and the right to be paid therefor out of his estate im-

mediately upon his death, and that although frequently requested the said defendant, since the death of his decedent, has failed and refused to pay plaintiff therefor.

The first proposition relied on by counsel is that plaintiff was allowed to recover without clear proof of an express contract, or proof direct, positive and unambiguous of facts and circumstances from which it might be reasonably inferred that there was a clear understanding whereby the decedent expected to pay and plaintiff expected to receive the compensation. Such a burden is clearly placed upon plaintiff in an action of this character. *Swiger, Adm'r.,* v. *Evans,* 75 W. Va. 236; *Gooch* v. *Gooch,* 70 W. Va. 38; *Cox* v. *Davis,* 85 W. Va. 604.

Has this burden been borne by the plaintiff in this case? His own testimony of course, with the exception noted, can not be considered; indeed he has not attempted to testify on this subject except in so far as the door was opened to him by the evidence in chief of the executor, and as to which no point has been made here. The fact of the contract, we think, is established, not only by direct and positive testimony of competent witness, but by direct, clear and unmistakable proof of facts and circumstances from which a contract may be reasonably inferred, according to the rule of evidence just stated. Of course there was testimony of witnesses for defendant conflicting with that of plaintiff, but the jury must necessarily have resolved the conflict in favor of plaintiff and to have found that there was in fact a contract between plaintiff and defendant's decedent, at or before the time the services were rendered, which was binding on decedent. Otherwise the jury could not under the several instructions propounded by both parties have found a verdict in favor of plaintiff.

By M. C. Musgrove, a brother in law, plaintiff proved that before decedent entered his home in the City of Grafton, he proposed to him and his wife that if they would move out on his farm and there cook and wash for and take care of him during his life, he would pay her, first $1,200.00, which she declined, then an offer of $2,000.00 was made, which on

account of the education of their children they were obliged
to also decline, and that decedent also proposed to plaintiff
that if his proposition was accepted, he would also give him
all that he could make out of the farm.   By P. F. Gillespie it
was proved that on two or three occasions while decedent
was living and boarding with plaintiff, he said to him and his
wife she would be well paid for his care and that he ex-
pected them to be well paid for their trouble.   By another
witness, Cecil Mason, a daughter of the witness Musgrove,
that she was present at the home of the plaintiff shortly be-
fore Christmas before decedent went to live with plaintiff
and his wife in January; that on another occasion when she
was there she found Mrs. Moran greasing the old man's breast
and that he said on that occasion that ''Dora and Ila would
be well paid for all they had done for him, and that all
they would have to do would be to turn in their bill, but that
they would get nothing until his death.''   By the witness N.
F. Kendall, residing near plaintiff at the time, he proved that
in 1917, when ''war gardens'' were being maintained, he
was present near the garden of plaintiff when decedent was
present and when reference was made to the high cost of
living, and that during the conversation the old man said:
''Ila has agreed to board me as long as I live and take a
fair pay out of what I have left for it''; and appealing to
plaintiff he inquired of him, ''Isn't that right, Ila,'' and Ila
replied, ''That is right, Father.''   On cross examination by
counsel this witness, referring to an occasion when he saw
Mrs. Moran going across the yard with a plate of something
good to eat for the old man, the latter said: ''Dora takes
care of me a whole lot better than most of my children would;
no one can do more than she does, and she shall be well
paid''; that he asked him if he had made arrangements to
pay her, and he said: ''It is this way; Dora has agreed to do
so, and I have agreed to pay her out of my estate after I am
dead and gone, that is what I want done''; that just at that
time Mrs. Moran called to him to come to his meal, and the
conversation ended.   By plaintiff's daughter he proved the
proposition made to her father and mother before decedent

came to live with them in January, 1913, and the fact that although decedent had during that time built himself a house on a lot next to theirs, but one intervening, he always boarded and slept in their home, and was there cared for, nursed and provided with meals, etc., until the time of his death.

The. testimony of defendant consisted mainly of alleged declarations of the plaintiff, the first perhaps the day he was moving the old gentleman from the farm to his home in Grafton, to the effect that he was going to take the old man and care for him without charge, and that he had neither a contract in writing or otherwise therefor. Several witnesses testify to such declaration, most of them closely related and interested in the result of .the suit.

Having·so testified plaintiff was recalled, and on examination denied any declaration of his purpose not to charge anything for his services to the deceased. He swore he did say to defendant after the death of the ,old man, that he had no written contract, which was true. but that he positively did not then or¹ before his death declare that he was not to make any charge for boarding and keeping him.

We think this evidence, taken in connection with all the other facts and circumstances detailed in evidence, including financial circumstances of decedent and those of plaintiff and his wife, made out a clear case of contract entitling plaintiff to reasonable compensation for the services rendered decedent and for his board and keep, the amount being determined by the jury on the evidence, and which justified their finding.

The second point urged against the judgment is that the verdict was against the decided weight and preponderance of the evidence and should have been set aside on· defendant's motion. It is true, if the facts were as assumed, that the verdict should have been vacated. *Dexter & Carpenter Co.* v. *Co-operative Fuel Co.,* 90 W. Va. 465, 111 S. E. 153. But the evidence above recited shows that the propositions of law involved have been fully satisfied by the evidence in this case.

Another point relied on is that the court erred in denying

defendant the right to show under the general plea of non-assumpsit that a part at least of the items sued for had been included in and constituted a part of the prior recovery by plaintiff's wife for the services rendered and sued for by her, excluded by the court, it is said, on the ground that there was no plea of former adjudication. If the facts were as assumed it may be that it was provable under the general issue. But whether so or not, there was no proper proffer of legal and competent evidence to prove the facts. It was proposed to be proved by the oral testimony of defendant that bills were presented to him by plaintiff and his wife for services rendered, and that Mrs. Moran had brought suit against him and obtained judgment for $3,290.00, and that a part of her claim for which said judgment was recovered was the same as sued for by plaintiff in the present action; and it was also proposed to introduce a copy of the declaration and bill of particulars and of said judgment. But this documentary evidence, the best evidence, was not made a part of the record by any bill of exceptions or otherwise, so that it can not be seen from any competent evidence whether the facts are as claimed or not, nor whether or not the court properly excluded the evidence. To be available on writ of error the record must affirmatively show what the evidence would have been; if oral, what the witness would have said; if documentary, the documents themselves must be made a part of the record by bill of exceptions; otherwise the appellate court can not see whether the complaining party has in fact been prejudiced. *Delmar Oil Co.* v. *Bartlett,* 62 W. Va. 700; *Halstead* v. *Horton,* 38 W. Va. 727; *Sesler* v. *Rolfe Coal & Coke Co.,* 51 W. Va. 318; *State* v. *Farley,* 78 W. Va. 471.

A fourth point relates to the instructions. As to the four instructions appearing to have been given on behalf of plaintiff, there is no complaint on this hearing. They seem to cover fully the plaintiff's theory of the case, and we perceive no error therein.

Of the twenty instructions requested on behalf of the defendant, numbers 2, 3, 5, 6, 7, 12, 13, 18 and 19 were given

as requested. Number 8 was refused because fully covered by Number 3, given. Number 11 was given, but with proper modification by the court. The complaint is that it should have been given without any modification. As proposed it would have told the jury that without a contract, verbal or written, with decedent, plaintiff would not be entitled to recover for the services sued for. The modification consisted solely in the interpolation by the court after the words ''verbal or written'' of the words, ''or under such facts and circumstances as clearly imply a promise or intention to pay therefor.'' Without this modification the instruction would not have come up to the requirements of the law as declared in *Swiger* v. *Evans, supra,* relied on by defendant. There was therefore no error in the modification.

Two or three of the defendant's instructions refused sought to limit recovery to items in the account accruing within five years next before the bringing of the suit. These were properly rejected because the only evidence on the subject was that plaintiff and his wife were not to be paid anything until after the death of the decedent; consequently the cause of action did not arise until after then, and by this agreement no part of the account sued for was barred when the suit was instituted. The instructions given on behalf of the defendant, therefore, cover every phase of the case presented, and the rejection of none of those refused constituted prejudicial error. Defendant's instruction Number 17 as proposed was properly refused for the reason given for negativing defendant's third point of error. The instruction was intended to cover a phase of defendant's case not presented by the record.

The twentieth instruction, refused, consisted of three interrogatories proposed to the jury, as follows:

''First: Was there any contract entered into between the plaintiff Ila Moran, and his father, Hezekiah Moran, now deceased, by the terms of which said plaintiff was to be paid and said Hezekiah Moran expected to pay said plaintiff for any of the things sued for in this action?

"Second: If such contract was entered into, and you answer the first question in the affirmative, what was the date of the contract?

"Third: Where was such contract made or entered into between the plaintiff and his said father?"

The first, and the second and third involved in the first, were clearly and sufficiently answered in the general verdict. The second and third were immaterial and indecisive; and when such is the case the party proposing such interrogatories can not complain of prejudicial error. *Milan* v. *Bartlett*, 78 W. Va. 367, 375. Wherefore, finding no error apparent on the face of the record calling for reversal, we affirm the judgment.

*Affirmed.*