# CHARLESTON.

## State *v.* J. F. Hudson.

## Submitted March 13, 1923.   Decided March 27, 1923.

1. Embezzlement—*Word "Embezzle" in Indictment Contains Charge that Defendant Converted Money to Own Use.*

    Under section 81a-xvii, chapter 21, Acts 1913, Hogg's Code 1913, ch. 54, ser. sec. 3068, the word "embezzle" includes in its meaning a conversion or appropriation to the embezzler's own use; therefore the use of the word "embezzle" in an indictment under the statute contains within itself the charge that the defendant converted the property to his own use.   (p. 442).

2. Same—*Essential Elements of Indictment Enumerated.*

    An indictment for embezzlement under that section, which charges that the defendant (1) feloniously did embezzle (2) certain moneys, stating the amount, (3) belonging to a designated state bank, (4) which moneys then and there were in defendant's possession, (5) by virtue of his office of cashier of said bank, (6) with intent to injure and defraud the bank, against the peace and dignity of the state, contains

all the elements essential to a valid indictment for the embezzlement of the moneys of the bank under the statute. (p. 442).

3.   SAME—*Indictment Should Describe Funds Embezzled.*

But an indictment for embezzlement of the funds and credits of a state bank under the statute should describe the funds and credits so embezzled, or show a proper excuse for lack of such description. (p. 445).

4.   SAME—*Terms "Moneys," "Funds," and "Credits," Defined.*

Under that section, which makes it a criminal offense for any officer or agent of a state bank to embezzle, abstract or wilfully misapply "any of the moneys, funds or credits of the institution," the word "moneys" refers to the currency or circulating medium of the country; the word "funds" refers to government, state, county, municipal or other bonds and to other forms of obligations and securities in which investments may be made; and the word "credits" refers to notes and bills payable to the bank and to other forms of direct promises to pay money to it. (p. 445).

5.   SAME—*Indictment Held Insufficient for Embezzlement of Moneys, Funds, and Credits of Bank.*

An indictment under section 81a-xvii, ch. 21, Acts 1913, which charges the embezzlement, abstraction and wilful misapplication of the moneys, funds and credits of a state bank by defendant, as its cashier, with intent to injure and defraud the bank, stating a definite sum of money, but without setting forth any particular description or amount of the funds and credits, so embezzled, abstracted or misapplied, is a valid indictment for the embezzlement of the moneys of the bank; but is insufficient as an indictment for embezzlement of the funds and credits of the bank; and is wholly insufficient as an indictment for the abstraction or wilful misapplication of either the moneys, funds or credits of the bank, because it fails to set forth the separate amounts of funds and credits and to aver how the abstraction or misapplication was made. (p. 445).

6.   SAME—*Method of Embezzlement; Amount and Description of Property Must be set out in Indictment.*

An indictment under such statute charging an officer of a state bank with the abstraction or wilful misapplication of the moneys, funds and credits of the bank, must state separately the amounts of money, funds and credits and a particular description of the funds and credits so abstracted

or misapplied, and by proper averments set forth how the abstraction or wilful misapplication was made and the facts from which the court can see that the act was unlawful. (p. 445).

7.  INDICTMENT AND INFORMATION—*Defendant May Require State to Elect Upon Which of Several Charges it Will Stand for Conviction.*

Under §81a-xvii, ch. 21, Acts 1913, embezzlement, abstraction or wilful misapplication of the moneys, funds and credits of a bank, by an officer or agent thereof, with intent to injure or defraud the bank or others, constitute three separate offenses; and while under our system of pleading, the three offenses may be joined in a single count in the same indictment, yet upon a trial thereof, at the close of the state's evidence tending to show the commission of two or more of the offenses charged, the defendant has the right to require the state to elect upon which charge it will stand for conviction; and it is error to overrule his motion so made. (p. 444).

8.  SAME—*Defendant may be Convicted of But One Charge in Indictment.*

While under the statute the three offenses, embezzlement, abstraction, and wilful misapplication may be joined in the same count in an indictment, yet the defendant, upon a trial thereof, can be convicted of but one of the offenses charged; and in such case it is error to instruct the jury that the jury may convict of all three offenses. (p. 443).

9.  EMBEZZLEMENT—*Allegations of Indictment and Proof Must Correspond.*

Upon a trial under the statute for embezzlement of the moneys of a state bank, to support a conviction the evidence must show that the defendant embezzled moneys; a showing that he embezzled funds or credits of the bank is not sufficient to support a conviction for embezzlement of moneys. The allegation and proof must correspond. (p. 446).

Error to Circuit Court, Greenbrier County.

J. F. Hudson was convicted of an offense against the state banking laws, and he brings error.

*Reversed and remanded.*

*T. C. Townsend,* for plaintiff in error.

*E. T. England,* Attorney General, *R. A. Blessing,* Assistant

Attorney General, *D. L. Salisbury* and *Lon H. Kelly,* for the State.

MEREDITH, JUDGE:

Defendant was convicted of an offense against the state banking laws, and relies for reversal mainly on the following grounds:

1. Overruling the demurrer to the indictment.
2. Refusal to require the state at the conclusion of its evidence, to elect on which charge it would stand for conviction.
3. Giving of improper instructions to the jury at the instance of the state.
4. Refusing to set aside the verdict and grant him a new trial, because of insufficient evidence to support the verdict.

Other errors are assigned, but we deem those stated controlling and we have rearranged the order of their assignment in the record, so as to discuss them in an orderly way. There are two counts to the indictment. The court overruled defendant's demurrer and motion to quash. On his motion to require the state to elect on which count it would try him, the state elected to try him on the second count. However, both counts are substantially the same. The count upon which he was tried reads:

> "And the jurors aforesaid, upon their oaths aforesaid do further present that the said J. F. Hudson, afterwards, to-wit, on the .... day of December, 1916, and the said county of Kanawha, did feloniously embezzle abstract and wilfully misplace money, funds and credits, the property of and belonging to the 'Day and Night Bank of Charleston,' a corporation, to-wit:
> NINE HUNDRED AND TWENTY-NINE DOLLARS & EIGHTY-SEVEN CENTS, good and lawful money of the United States of America of the value of $929.87, with the intent then and there the said the 'Day and Night Bank of Charleston' a corporation, to injure and defraud; he the said J. F. Hudson, having then and there in his possession such money, funds and credits by virtue of a certain office, place and employ-

ment, which he, the said J. F. Hudson then and there held and occuped, to-wit, Cashier of the said the "Day and Night Bank of Charleston," a corporation, said "Day and Night Bank of Charleston," a corporation, then and there being a bank of issue and discount and of deposit, organized and doing business and formed under the laws of West Virginia, against peace and dignity of the State."

The indictment is based on section 81a-xvii chapter 21, Acts 1913, Hogg's Code, 1913, ch. 54, ser. sec. 3068, which reads as follows:

"Every president, director, cashier, teller, clerk or agent of any institution mentioned in this act who embezzles, abstracts or wilfully misplaces any of the money, funds or credits of the institution, or who, without authority from the directors, issues or puts in circulation any of the notes of any bank or other institution, or who, without such authority, issues or puts forth any certificates of deposits, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment or decree of any bank or other institution mentioned in this act, with intent in either case to injure or defraud the bank or other institution or any other company, body politic or corporate, or any individual person, or to deceive any officer of any bank or other institution or any agent appointed to examine the affairs of such bank or other institution, and every person who with like intent, in any way aids or abets any officer, clerk, or agent in the violation of this section, shall be deemed guilty of a felony, and on conviction thereof shall be imprisoned in the penitentiary not less than five nor more than ten years."

This section was amended, chapter 11, Acts 1917, substituting the word "misapplies" for the word "misplaces." Barnes' Code, 1923, sec. 81a (17) chapter 54. The prosecution is under the original statute, but, as suggested by counsel in argument, for the purpose of this discussion we assume, though we do not decide, that the two words have the same meaning. Our statute was modeled after the Federal statute governing National Banks, and the amendment was doubtless

adopted to make the statute conform to the federal statute. The two statutes are substantially similar. This is the first time our statute has been brought under consideration by this court, so in construing it, we are justified in paying great respect to the decisions of the Federal Courts in construing the Federal statute. Defendant insists that the count upon which he was tried is defective; that it fails to charge in apt language the commission of any offense, because it fails to state that he converted any of the moneys, funds and credits of the bank to his own use. The Attorney General argues that a charge that he embezzled carries with it the charge of conversion; that the word "embezzle" as used in the statute includes in its meaning a conversion to the embezzler's own use and therefore where it is charged that the defendant "did embezzle" certain property it is charged that he "converted it to his own use," and cites us to *State* v. *Wolff,* 34 La. Ann. 1153. We do not find that this question has been directly passed on by the Federal Courts. The case nearest in point, and frequently cited on the question, is *United States* v. *Harper,* 33 Fed. 471, in which it is stated that "To constitute the crime of embezzlement under Rev. St. U. S. §5209, defining the offense of embezzlement of the funds of a banking institution by its officers, it must appear that the moneys or funds embezzled came lawfully into the possession of defendant, and were, while so held by him, converted to his own use, with intent to defraud the bank." However, we find that the indictment in that case charged "that he did unlawfully embezzle and convert to his own use" certain funds of the bank; and this seems to be the general form in substance used in the Federal and other courts. The word "embezzle" seems to have acquired a technical legal meaning and means "fraudulently converted to his own use." *Teston* v. *State,* 50 Fla. 137, 39 So. 787; *Mills* v. *State,* 53 Neb. 263, 73 N. W. 761. However, neither of these cases support the proposition that the use of the word "embezzle" without the explanatory phrase "Convert to his own use" would be sufficient in an indictment. In *State* v. *Cantor,* decided by this court this present term, we held, in an opinion written by

Judge LIVELY, that "An indictment under section 19, chapter 145, Code, must aver the proper venue and time, that defendant did feloniously embezzle, convert to his own use and steal the property embraced in the section, describing it, and stating its value." That statute, however, older and more general than the one under consideration, uses the expression, "embezzle or fraudulently convert to his own use" and makes the offense larceny.

As a general rule an indictment for a statutory offense is sufficient if it charges the offense in the language of the statute; but all the necessary elements to constitute the offense must be stated. In this case, if the words "feloniously did embezzle" mean "did convert to his own use" then all the essential elements are set out in the indictment, namely: (1) that he embezzled, (2) moneys of the value of $929.87, (3) belonging to the Day and Night Bank of Charleston, a corporation, (4) which were then and there in his possession, (5) by virtue of his office of cashier of said bank, (6) with intent to injure and defraud the bank.

The law respecting indictments for embezzlement is stated in 20 C. J. 457:

"Embezzlement being a statutory offense the sufficiency of indictment or information is to be tested, not by the rules of the common law, but by the requirements of the particular statute, upon which it is bottomed. It is necessary to set forth all the constituent facts and circumstances necessary to bring accused within the statutory provisions with certainty and directness, and in such a manner as to apprise defendant of the precise nature of the charge made against him, and enable him to meet the facts expected to be proved. No technical words are necessary, as in charging common law offenses, and it is sufficient to charge the offense in ordinary and concise language. An indictment or information for embezzlement which charges the facts constituting the crime in the words of the statute, or in words of equivalent import or more extensive signification which necessarily include the words of the statute, is sufficient; but this rule is to be limited to cases where the words of the statute themselves fully, directly, and expressly, without any uncertainty or ambiguity, set

forth all the elements to constitute the offense. Where
the terms of the statute are broader than the intent of
the legislature the indictment must be so drawn as to
effectuate the intention of the legislature by which
the statute was framed; but where the terms of the act
are clear and unequivocal, there is no authority by
which courts may narrow its prohibition or limit its
operation.''

See also 9 R. C. L. 1287.

The indictment in this case insofar as it charges the em-
bezzlement of moneys belonging to the bank is so clear, that
it would not have been made plainer if it had been charged
that defendant converted to his own use the sum named. In
the statute under consideration, we think the word ''em-
bezzle'' includes in is meaning appropriation to one's own
use, and therefore it contains within itself the charge that
defendant converted the moneys of the bank to his own use.
We therefore are of opinion that the demurrer was properly
overruled.

In considering the second assignment of error it is neces-
sary to note the particular words of the statute involved in
the indictment. They are:—Every—cashier—of any insti-
tution mentioned in this act, who (1) embezzles, (2) abstracts
or, (3) wilfully misplaces (misapplies) any of the (1)
moneys, (2) funds or (3) credits of the institution—with
intent in either case to injure or defraud the bank or other
institution or any other company, body politic or corporate,
or any individual person—shall be deemed guilty of a
felony.''

There are three separate offenses named: embezzlement, ab-
straction, and wilful misapplication; there are also three
separate things or objects which may be embezzled, abstracted
or wilfully misapplied,—moneys, funds and credits. *United
States* v. *Smith,* 152 Fed. 542; *United States* v. *Breese,* 173
Fed. 402. The indictment attempts to charge the three
offenses in the same count respecting the three things or ob-
jects. The uniform practice in the Federal Courts seems to
be that the offenses may be joined in the same indictment, but
not in the same count. *United States* v. *Cadwallader,* 59

Fed. 677; Bolles' Nat'l Banking Act (4th ed.) page 323; *United States* v. *Martindale*, 146 Fed. 280; *United States* v. *Smith*, 152 Fed. 542. It is bad practice to join different offenses in the same count in our system of pleading, but such a count containing a charge of two or more offenses is not bad on demurrer because of misjoinder, as no objection can be taken for mere form, under section 10, chapter 158, Code. As stated in *State* v. *Jarrell*, 76 W. Va. 263, 85 S. E. 525, syl. pt. 2: "The duplicity incident to the joinder, in a single count in an indictment, of two or more misdemeanors of the same general nature and subject to the same punishment, is a formal defect from which sec. 10, ch. 158, serial sec. 5559 relieves." And Judge Poffenbarger in his opinion in that case says: "Joinder of two or more offenses in the same count has always been condemned, because violative of the technical rules forbidding duplicity. But the rule is not designed for the protection of the accused. Its purpose is to require observance of mere matter of form, for avoidance of prolixity and confusion and in the interest of convenience and good form. Considerations of mere convenience and orderly appearance in the administration of justice are rapidly losing weight in the opinions of courts, lawyers, layman and legislators." That case involved a joinder of misdemeanors in the same count; this case a joinder of felonies. But the statute, sec. 10, ch. 158, Code, makes no distinction. It applies to all indictments.

As already stated, there are three offenses charged; but only one of them, that of embezzlement, is correctly charged, and that only as to embezzlement of moneys of the bank. This will be later referred to. The three charges belong to what, by lawyers, is termed a "family of offenses" created by the statute. Now while it was held in *State* v. *McClung*, 35 W. Va. 280, 13 S. E. 654, that a count in an indictment may contain a charge of burglary and a charge of larceny, there can not be a conviction of both. A general verdict of guilty on such a count would be for burglary, not for both burglary and larceny, nor for larceny. But at the conclusion of the state's evidence, where more than one offense is charged

in the same count, and there is evidence to support two or more of the offenses charged, the defendant may, on motion, require the state to elect the offense on which it will stand for conviction. ''Where under an indictment, consisting of one count, which charges the defendant generally with unlawfully manufacturing, (other than by moonshine still), selling, offering, keeping, storing, exposing for sale, soliciting and receiving orders for liquors, the state offers evidence tending to prove two or more sales within the period covered by the indictment, at the close of the state's evidence, the defendant has the right to require the state to elect the sale upon which it will stand for conviction.'' *State* v. *Baker*, 93 W. Va. 55. See also: *State* v. *Bailey,* 75. W. Va. 250, 83 S. E. 910; *State* v. *Davis,* 68 W. Va. 184, 69 S. E. 644; *State* v. *Calhoun,* 67 W. Va. 666, 69 S. E. 1098; *State* v. *Chisnell,* 36. W. Va. 659, 15 S. E. 412.

It follows, therefore, that defendant's motion to require the state to elect whether it would stand for conviction upon its charge of embezzlement, or of abstraction, or of wilful misapplication, should have prevailed. As the record stands, it is impossible to determine of which offense he was convicted.

The third assignment relates to the giving of instructions on behalf of the state. Instruction No. 2 is as follows:

> ''The Court instructs the jury that if you believe from the evidence that J. F. Hudson was, during the month of December, 1916, at Charleston, Kanawha County, West Virginia, the cashier of the Day and Night Bank of Charleston, West Virginia, as charged in the indictment, and in charge of the money and funds of said bank, and that as such cashier of said Bank, the draft of $929.87 drawn on him by G. G. Rice, read in evidence; and that the said draft was an obligation or debt of the said Hudson and not an obligation or debt of the said bank; and that in so paying said draft or so causing it to be paid, he, the said Hudson, either embezzled, abstracted or wilfully misplaced any of the money or funds or credits of said bank with intent either to injure the said bank or to defraud it, then in such case he, the said Hudson, is guilty of the offense charged against him in the indictment and you should so find by your verdict.''

It correctly states the law; but it ought not to have been given. The offenses of abstraction and wilful misapplication are not sufficiently charged. Embezzlement under the statute may include the offenses of abstraction and wilful misapplication, but either abstraction or wilful misapplication may be committed without embezzlement. Under this provision embezzlement involves: (1) converting to his own use, (2) the moneys, funds or credits (3) of the bank, (4) which must have been lawfully in his custody or possession, (5) by virtue of his office or employment, (6) with intent to injure or defraud the bank or others. As already stated, the charge as to the embezzlement of the moneys of the bank is correctly made out. It is otherwise, however, as to the same charge as to funds and credits of the bank. The word "money" in the statute refers to the currency or circulating medium of the country, and is sufficiently identified or described by calling it money and designating the amount embezzled, under section 5, chapter 158, Code; and proof of the embezzlement of an amount different from the sum stated is sufficient. But the reason why no description of the money charged to have been embezzled is required is found in the statute above cited. Before it was enacted, it was necessary to describe the money and follow allegation with proof in order to convict of embezzlement. *Leftwich* v. *Commonwealth,* 20 Grat. (Va.) 716; 1 Wharton Crim. Proc. §589. However, we have no such statute relieving the state from describing the funds and credits charged to have been embezzled, abstracted or wilfully misapplied. Under the federal statute it has been held that the word "funds" refers to government, state, county, municipal or other bonds, and to other forms of obligations and securities in which investments may be made, and the word "credits" to notes and bills payable to the bank and to other forms of direct promises to pay money to it. *United States* v. *Smith,* supra; *United States* v. *Breese,* supra. So it is seen that "moneys," "funds" and "credits" are not convertible terms. They do not mean the same thing; hence the charge of embezzlement as to the funds and credits of the bank is insufficient, as the funds and credits are in no wise described, nor is any excuse averred for lack of description.

"The standard of certainty in the description required of the property is the accuracy required in an indictment charging larceny." 1 Wharton, Crim. Proc. §588. In stating the difference between the terms "embezzlement" and "abstraction" or "wilful misapplication" under the statute, Judge Taft, now Chief Justice, said "Embezzlement is the unlawful conversion by an officer of the bank to his own use of funds intrusted to him with intent to injure or defraud the bank. Abstraction and misapplication are a conversion to his own use by an officer of the bank of funds of the bank which are not especially intrusted to his care." *United States* v. *Youtsey,* 91 Fed. 864; *United States* v. *Breese, supra.* While the last two terms may not be quite accurately defined, yet it clearly appears they are not the same as embezzlement. And an indictment under the statute for abstraction or wilful misapplication of the money, funds and credits of the bank should contain a description of the funds and credits so abstracted or misapplied and how much there was of the money, funds and credits separately, and show how the abstraction or misapplication was made. *United States* v. *Smith,* 152 Fed. 542. Mr. Justice Gray, in *Batchelor* v. *United States,* 156 U. S. 426, 15 Sup. Ct. Rep. 426, 30 Law ed. 478, said: "By the settled rules of criminal pleading, and by the previous decisions of this court, the words 'wilfully misapplies', have no settled technical meaning (such as the word 'embezzle' has in the statutes, or the words 'steal, take and carry away' have at common law), do not, of themselves, fully and clearly set out every element necessary to constitute the offense intended to be punished; but they must be supplemented by further averments, showing how the misapplication was made, and that it was an unlawful one. Without such averment, there is no sufficient description of the exact offense with which the defendant is charged, so as to enable him to defend himself against it, or to plead an acquittal or conviction in bar of a future prosecution for the same cause."

See, also, *U. S.* v. *Britton,* 107 U. S. 655, 2 Sup. Ct. 512, 27 L. Ed. 520; *U. S.* v. *Northway,* 120 U. S. 327, 7 Sup. Ct. 580, 30 L. Ed. 664; *Evans* v. *U. S.,* 153 U. S. 584, 14 Sup. Ct. 934,

38 L. Ed. 830; *U. S.* v. *Steinman,* 172 Fed. 913, 97 C. C. A. 271 (C. C. A. Third Cir.).

The indictment in the present case in no respect comes up to these requirements. It therefore follows that the instruction quoted should not have been given. There were no proper averments of the charges of abstraction or wilful mis-application, and a conviction of either could not be sustained.

The fourth point of error is that the evidence does not sustain the verdict. The proof shows that on December 6, 1916, one G. G. Rice, at New York, drew a sight draft on defendant for $929.87; this was delivered to the Equitable Trust Company of that city, by it endorsed and transmitted to the Kanawha Banking and Trust Company of Charleston, West Virginia, and by the latter company was presented to the Day ad Night Bank and paid on December 11, 1916. The draft thereafter was carried by the Day and Night Bank as a cash item for a number of years, and until it was closed by the State Banking Commission. There is some evidence tending to show that a day or so before the bank was closed, the defendant turned over the notes and other property for the purpose of paying and sufficient to pay this over-draft with other debts owing by him to the bank. How the draft was paid by the Day and Night Bank to the Kanawha Banking and Trust Company does not appear, but it was, so far as the record discloses, cleared in the usual way. Each bank would have items of checks or drafts on the other, and the difference or balance, as is usual in the smaller cities where no regular clearing house is maintained, would be paid in cash or by bank draft. What the difference or balance between the two banks was on December 11, 1916, is not disclosed. We can not assume that the draft was paid in money, so the evidence is wholly insufficient to prove that the defendant paid it out of the moneys of the bank. If paid, it was doubtless paid out of the credits of the bank, and while this might be sufficient to support the conviction of embezzlement of credits if the credits were properly described in the indictment, yet there is no such description. Hence, we are bound to hold that the evidence is wholly insufficient to sustain a conviction upon the charge as laid in the indictment. The banking laws should

be properly enforced, but this ought to be done according to the settled rules of law.

For the foregoing reasons, the judgment is reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*